IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

MARTIN RILEY ROBINSON,

      Plaintiff,

v.                                                            Case No. 2:13-cv-13686

DAVID MON, CO II,
JAMES RUBENSTEIN, Commissioner of Corrections,
DAVID BALLARD, Warden,
DONNA WARDEN, H.S.A. at Wexford Health Services at MOCC,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

On June 7, 2013, the plaintiff filed a Complaint arising out of an incident that occurred with another inmate in a common area ("day room") of Stuart Hall at the Mount Olive Correctional Complex ("MOCC") on March 19, 2013.  (ECF No. 2 at 9). Pending before the court are the following motions:  a Motion to Dismiss filed by defendants David Mon, James Rubenstein and David Ballard (ECF No. 15), and a Motion to Dismiss filed by defendant Donna Warden (ECF No. 17).

This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## THE PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff alleges that, on March 19, 2013, he was attacked by another inmate, Shawn Elmore, in the day room of Stuart Hall at MOCC, because Elmore believed that

the plaintiff had informed prison officials that Elmore was making wine in his cell.  (ECF No. 2 at 9).  The plaintiff alleges that Elmore attacked him from behind, put him in a chokehold and choked him until he was unconscious, then continued to kick and beat the plaintiff about his head.  (*Id.*)

The plaintiff further alleges that CO II David Mon was on duty in that unit at that time and failed to notice that the attack was occurring because he was on the telephone and was inattentive to the inmates in the day room, and did not react or respond until he was told by another correctional officer about what was happening.  (*Id.*)  The plaintiff further alleges that, although the medical department was notified, they were not able to properly respond in a timely fashion because the institutional ambulance (an electronic emergency vehicle) was inoperative because the battery had not been properly charged.  (*Id.* at 10).  The plaintiff alleges that he remained unconscious or unresponsive throughout this time.  (*Id.*)

After being stabilized and evaluated by the medical department, the plaintiff was subsequently transported to a hospital in Charleston, West Virginia, where he underwent emergency surgery.  (*Id.*)  The plaintiff alleges that he had two plates installed in his face to mend fractured cheekbones, that he lost a tooth and received multiple stitches in his upper lip where the plates had been inserted, and also suffered damage to his left eye.  He further alleges that the left side of his face remains numb and that he had a significant amount of swelling in his brain.  (*Id.*)  The plaintiff further alleges that he remained in the hospital for six or seven days and then was placed in the medical unit at MOCC for three days. (*Id.*)

The plaintiff further alleges that he was subsequently taken before Correctional Hearing Officer Brian Greenwood after being falsely written up by CO II Mon on a Class Two rule violation for fighting.  (*Id.*).  The write-up indicated that CO II Mon:

> witnessed I/M Shawn Elmore DOC #49624 and I/M Martin Robinson DOC #29980 striking each other with closed fists.  At that time, I issued several loud clear verbal orders for the inmates to stop fighting and radioed for assistance via institutional redio [sic; radio].

(ECF No. 2 at 10).  The plaintiff alleges that CO II Mon repeatedly stated that he saw the plaintiff throw punches, when CO II Mon was not even looking toward the Pod area, and did not see anything until alerted by another officer.  (*Id.* at 11).  The plaintiff further alleges that two other inmates who witnessed the incident wound up testifying that they did not see the entire event.  (*Id.* at 10-11).  The plaintiff alleges that these inmates later stated that they felt threatened by the prospect of retaliation by Elmore, who is supposedly a "violent member of a gang at the MOCC facility."  (*Id.* at 11).

The plaintiff further alleges that he was found guilty of the rule violation and was placed in punitive segregation for 15 days, and lost privileges for that same time period.  (*Id.*).  He further alleges that he lost his institutional job in the kitchen while he was in segregation.  (*Id.*)  The plaintiff also alleges that some of his personal property went missing during the time he was in segregation.  (*Id.*)

Following service of process, on December 11, 2013, defendant Donna Warden, by counsel Vaughn T. Sizemore and the law firm of Bailey & Wyant, P.L.L.C., filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 15), and a Memorandum of Law in support thereof (ECF No. 16).  On that same date, defendants Mon, Rubenstein and Ballard, by counsel Dwayne E. Cyrus, Kimberly M. Bandy and the law firm of Shuman, McCuskey & Slicer, PLLC, filed

3

a Motion for Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 17) and a Memorandum of Law in support thereof (ECF No. 18).

On May 7, 2014, after being granted an extension of time to file his responses, the plaintiff filed Objections to both of the Motions to Dismiss (ECF Nos. 31 and 32).   On May 20, 2014, defendant Donna Warden filed a Reply brief.  (ECF No. 33).  This matter is now ripe for adjudication.

## **STANDARD OF REVIEW**

The defendants have filed Motions to Dismiss (ECF No. 15, 17) and Memoranda of Law in support thereof (ECF No. 16, 18).  The defendants' motions asserts that the plaintiff's Complaint fails to state a claim upon which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure     In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a

4

legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.
* * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Defendant Donna Warden's Motion to Dismiss also contends that the court lacks subject matter jurisdiction to consider any potential negligence claim against her because the plaintiff failed to comply with the requirements of West Virginia Code § 55-7B-6.  Thus, defendant Warden has also moved to dismiss the plaintiff's Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Under Rule 12(b)(1), the court assumes that the allegations in the Complaint are true and affords the plaintiff the same procedural protections he would receive under Rule 12(b)(6).  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  The burden of proving that the court has subject matter jurisdiction, however, rests with the plaintiff.  *Johnson v. North Carolina*, ____ F. Supp.2d ____, 2012 WL 5024039, at *4 (W.D.N.C. Oct. 17, 2012).

The defendants' motions will be reviewed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

The undersigned first notes that the plaintiff's Complaint fails to identify <u>any</u> legal basis for his claims in his Complaint.  Furthermore, although he identifies each of the defendants and their job title and alleged duties, the Complaint fails to allege any

specific allegations against any of the defendants, except for CO II David Mon.   The undersigned will address each of the arguments made in the Motions to Dismiss filed by the defendants and the plaintiff's objections thereto.

**A.     The Motion to Dismiss filed by Donna Warden.**

Donna Warden's Motion to Dismiss recognizes that the plaintiff's Complaint fails to identify any cause of action against her.   Nevertheless, her Memorandum addresses potential causes of action based upon medical malpractice and any allegation that her conduct violated the plaintiff's Eighth Amendment rights.   The undersigned will first address any potential Eighth Amendment claim and will then turn to any potential negligence/medical malpractice claim.

*Eighth Amendment claim*

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"   The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.,* at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.,* at 834. (Citations omitted.)   The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*, at 837. "In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness*." Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). A "serious medical need" is one which has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *See id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and health care providers is very high. It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35;

7

*Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*,
582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green

Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).

For example, in *Sosebee*, the Fourth Circuit found that if prison guards were aware that

a steak bone had pierced an inmate's esophagus, causing infection that resulted in the

inmate's death, and the guards had intentionally abstained from seeking medical help,

such conduct <u>might</u> establish deliberate indifference to a serious medical need.

        In *Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had

complained numerous times of eye problems and loss of vision, claimed that he was

cursorily examined after his initial complaint, but never re-examined despite later

complaints.  The doctor claimed that he examined Webster several times, but never

diagnosed a medical problem with his eye.  *Id.* at 1286.  Subsequently, a specialist found

that Webster's vision had deteriorated to 20/400 and that he suffered from a detached

retina and iritis, and that his vision could not be restored.  *Id.*  The Fourth Circuit found

that, even if the doctor had been negligent in failing to properly diagnose or treat

Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious

medical need and, thus, Webster's allegations did not constitute a cognizable

constitutional claim.  *See also, Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

        Likewise, disagreements between a health care provider and the inmate over a

diagnosis and the proper course of treatment are not sufficient to support a deliberate

indifference claim, and questions of medical judgment are not subject to judicial review.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318,

319 (4th Cir. 1975).  As noted by the Fourth Circuit, an inmate is not entitled to

unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

The Motion to Dismiss filed by Donna Warden asserts that, even taking the plaintiff's allegations as true, they cannot meet either the objective or subjective components of this standard.  Her Memorandum of Law states:

> The Plaintiff's allegations in his Complaint do not allege that Defendant Warden was deliberately indifferent to a serious medical condition of the Plaintiff.  In fact, the only allegations in his Complaint that appear to allege any wrongdoing on the part of the medical provider is the allegation that "the medical response units were not able to properly respond in a timely fashion because the institutional ambulance (an electronic emergency vehicle) was inoperative due to yet another failure of Mt. Olive staff, and/or medical personnel, to assure that the electronic ambulance vehicle was plugged into the battery charger, to maintain a full charge, allowing the emergency vehicle to operate."  Complaint at 3.  However, the plaintiff continues by admitting that, when the institutional ambulance was inoperable, the medical personnel responded with a gurney.  *See id.*  Further, the Plaintiff did not allege the inoperable ambulance was deliberate, nor did he allege that Defendant Warden was involved with the ambulance.  Therefore, to the extent that the Complaint is read to include a claim under the Eighth Amendment, it must be dismissed for failure to state a claim for which relief may be granted.

(ECF No. 16 at 8-9).

The plaintiff's Objection to Defendant Warden's Motion to Dismiss (ECF No. 31) (hereinafter "Response") first asserts that the plaintiff unsuccessfully moved to amend his Complaint to "cure" the inadequacies in his Complaint as addressed by the defendants' motions.  As further noted by the plaintiff, the undersigned denied the plaintiff's Motion to Amend because the plaintiff did not submit a proposed Amended Complaint, or in any way address what additional allegations or amendments he intended to make to his Complaint. (*Id.* at 1-2; *see also* ECF No. 29, Order denying Motion to Amend without prejudice).  Accordingly, the undersigned was not in a

position to determine whether amendment of the Complaint was warranted or whether the same would be futile. (ECF No. 29). The plaintiff asserts that nothing in the rules indicates that the plaintiff was required to submit a proposed Amended Complaint in advance of the court ruling on a Motion to Amend. (ECF No. 31 at 1). The plaintiff then addresses the arguments made by defendant Warden in her Motion to Dismiss. (*Id.* at 2-14).

Concerning any alleged Eighth Amendment claim, the plaintiff's Response attempts to establish that "as a matter of practice, Wexford personnel operating within the confines of the MOCC facility routinely respond to medical emergencies in a deliberate and slow manner." (ECF No. 31 at 7). The plaintiff's Response then discusses an unrelated instance of Wexford personnel's response to a medical emergency at MOCC. (*Id.* at 8-9). The plaintiff's Response then discusses Wexford's contract with the State of West Virginia and its duty under the contract and its Medical Provider Handbook to provide "immediate medical service at any time an emergency arises." (*Id.* at 9). The plaintiff alleges that the delay in bringing medical services to him on March 19 , 2013, "caused him to unnecessarily suffer in extreme pain for an unnecessary period of time . . . ." (*Id.* at 10-11).

The plaintiff's Response further states:

> Defendant Donna Warden was, is and remains acting Health Services Administrator within the MOCC environment. Further, she has at all times acted in that capacity within the MOCC correctional environment, and did so with full knowledge that repeated improper delays in delivering proper access to medical care, and creating a substantial risk of harm has been and remains a problem, and in her capacity and authority has freely elected not to take appropriate actions to correct the problems. This constitutes a condition of deliberate indifference to the Plaintiff's right to access to medical attention without undue delay, and the unwarranted creation of a substantial risk of harm when neither is reasonably related to legitimate penological purpose

supported under any legal theory.

 Defendant Warden further has a duty by virtue of contracted mandates and the directives and mandates through her employment and the Wexford Medical Provider handbook, to have made sure that proper medical response was available to the Plaintiff and all inmates receiving medical services under her authority. This as well constitutes a condition of deliberate indifference [to] the Plaintiff's right to access to medical attention without undue delay, and the unwarranted creation of a substantial risk of harm when neither is reasonably related to legitimate penological interests, and serves no valid penological purpose.

(ECF No. 31 at 13-14).

 Defendant Warden's Reply (ECF No. 33) emphasizes that the plaintiff's allegations in his Complaint do not allege that defendant Warden was deliberately indifferent to a serious medical need, and that the only allegation directed towards any medical personnel concerns the failure to have the electric ambulance charged and ready for use. Even accepting that the electric ambulance was inoperable, defendant Warden maintains that a gurney was brought to the plaintiff's location and he was promptly evaluated and sent to the hospital where his injuries were treated. (*Id.* at 1-3). Defendant Warden notes that there are no specific allegations made concerning her conduct on the date of this incident, and there are no allegations to establish that she acted with deliberate indifference to the plaintiff's medical needs. Thus, the plaintiff cannot properly state a claim against her under the Eighth Amendment. (*Id.* at 3-4).

 The plaintiff's Response does not successfully rebut the arguments and precedent cited by defendant Warden. Even taken in the light most favorable to the plaintiff, his allegations concerning the conduct of defendant Warden (or the medical personnel in general) do not rise to the level of deliberate indifference to a serious medical need. Rather, at most, the allegations in the Complaint concerning the medical personnel might rise to the level of negligence, which is not actionable under the United States

11

Constitution and cannot state a claim under 42 U.S.C. § 1983.  Moreover, the Complaint, which contains absolutely no allegations concerning the specific conduct of defendant Warden, appears to be attempting to hold defendant Warden liable as a supervisor and administrator, under a theory of *respondeat superior*, which is also inappropriate under section 1983.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to plead facts that could plausibly give rise to an Eighth Amendment claim against defendant Donna Warden.

## *Potential negligence claim*

Defendant Warden also asserts that, to the extent that the plaintiff's Complaint is alleging that Warden's conduct, or that of other medical personnel, during this incident constitutes negligence or medical malpractice, the plaintiff has failed to satisfy the pre-requisites of the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-6, which requires a person bringing a tort action related to medical care to serve a notice of claim and a screening certificate of merit from a qualified expert health care provider indicating that a defendant's conduct violated the applicable standard of care, which resulted in injury to the plaintiff.  *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006).  (ECF No. 16 at 3-5).  Defendant Warden's Memorandum of Law states in pertinent part:

> In essence, the MPLA applies to any claim for damages resulting from any tort based on any act performed by a person or corporation during the plaintiff's medical care, treatment or confinement.  The Plaintiff's Complaint alleges that this Defendant committed various acts of medical negligence.  Yet, the Plaintiff failed to provide a pre-suit notice of claim and failed to submit a screening certificate of merit.  Without providing the Defendants with pre-suit notice and a screening certificate of

merit by qualified expert, Plaintiff's allegations of medical malpractice must be dismissed pursuant to *W. Va. Code* § 55-7B-6.

(*Id.* at 5). Thus, the pre-suit notification and filing of a screening certificate of merit is jurisdictional, and dismissal for failure to comply is mandatory. (*Id.*)

The plaintiff's Response asserts that he provided notification of his lawsuit to state officials, and provides a copy of the notice. (ECF No. 31 at 2-3 and 16). His Response states:

> Although the Plaintiff raised no specific allegations within his complaint stating that his claims were in any manner related to, or directed toward any allegation of malpractice as alleged by Defendant Warden, the Plaintiff does assert that contrary to statements and indications by Defendant Warden, he did in fact issue a pre-suit notification to Defendant Warden, titled "Notice of Intent to File Suit," and did therein advise that he would be seeking remedy through Civil means after a period of thirty (30) days. [footnote omitted]. See copy attached for the Court's review.

> Although WV Code §55-7B-6 states that such notifications are to be served by "Certified Mail/Return Receipt Requested," due directly to the WVDOC and MOCC operational restrictions, and agreements between such agencies and parties working within the confines of the MOCC facility – all of which are routinely forced upon the incarcerated persons such as the Plaintiff – within the concealed and encapsulated confines of the MOCC environment the Plaintiff is unable to, and is further restricted from complying with such requirements as to any party who works or operates within the confines of the MOCC environment.

(ECF No. 31 at 2-3). Thus, the plaintiff asserts that MOCC and its contracted medical provider, Wexford Health Sources, Inc., and defendant Warden as an employee thereof, actively restrict inmates from sending such notices from within the institution, especially by certified mail, as required. (*Id.* at 3).

The plaintiff further asserts that he did not need to submit a Certificate of Merit because his alleged cause of action is "based upon well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable

13

standards of care . . . ." (*Id.* at 3-4).  The plaintiff also asserts that, in response to the notice he sent to defendant Warden, she was required to make a request for a more definite statement if she believed that the notice was insufficient.  (*Id.* at 4).

Defendant Warden's Reply contends that the plaintiff has conceded his claim of medical malpractice under the MPLA.  However, the Reply improperly contends that the plaintiff did not discuss or allege that he provided the required pre-suit notification and, thus, any negligence claim should be dismissed.  (ECF No. 33 at 1).  Nevertheless, for the reasons stated below, the undersigned proposes that any such negligence claim cannot proceed.

It is difficult to garner any cognizable claim that may be raised in this federal court in the plaintiff's Complaint.  While the plaintiff's Response indicates that he provided defendant Warden with a pre-suit notification, it is clear from a review of the "Notice of Intent to File Suit" included at page 16 of the plaintiff's Response (ECF No. 31 at 16), that the notice was provided to the Commissioner of Corrections, pursuant to W. Va. Code § 55-17-1, and asserts the plaintiff's intent to file suit under the Eighth and Fourteenth Amendments.  The notice makes no mention of medical negligence or that the notice was being provided under W. Va. Code § 55-7B-6; nor does it even discuss any conduct by medical professionals.

While this action by the plaintiff may have satisfied W. Va. Code § 55-17-3 (which is not required to file a suit in federal court), it does not demonstrate that the plaintiff served upon Wexford Health Sources, Inc., or any of its employees, a notice of claim and a screening certificate of merit from a qualified expert health care provider indicating

that a defendant's conduct violated the applicable standard of care[1], which resulted in injury to the plaintiff, as required by W. Va. Code § 55-7B-6.  *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006).  Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to comply with the jurisdictional pre-requisites for filing a state law medical negligence claim and, thus, even if the plaintiff could successfully state a medical negligence claim based upon the allegations in his Complaint, this court has no jurisdiction to consider the plaintiff's tort-based medical claims.

Based upon the facts alleged in the Complaint and other documentation, it appears that the plaintiff received evaluation and treatment while at MOCC and was then sent to a hospital for necessary treatment for his injuries.  The plaintiff has voiced his dissatisfaction with the speed with which the medical personnel responded.  Thus, the plaintiff has alleged nothing more than a disagreement with the course and timing of his treatment.  Furthermore, the plaintiff has alleged no specific allegations against defendant Warden in regard to his treatment that day.

Taking the plaintiff's allegations as true, and in the light most favorable to the plaintiff, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not sufficiently alleged that Donna Warden or any other Wexford employee acted with deliberate indifference to his serious medical needs.  The undersigned further proposes that the presiding District Judge **FIND** that the plaintiff has failed to satisfy the jurisdictional pre-requisites of the MPLA in order to state a negligence or medical

---

[1]  Contrary to the plaintiff's assertions that he is not required to provide a screening certificate of merit because he is relying upon a "well-established legal theory of liability," he has not even identified any such theory or standard of care that has allegedly been breached.

malpractice claim against Donna Warden, Wexford Health Sources, Inc., or any other Wexford employees. Thus, this court lacks subject matter jurisdiction to consider any negligence claim.

Accordingly, for the reasons stated herein, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted against Donna Warden or Wexford Health Sources, Inc.

### B.    The Motion to Dismiss filed by Ballard and Rubenstein.

The plaintiff has also sued CO II David Mon, James Rubenstein, the Commissioner of the West Virginia Division of Corrections, and David Ballard, the Warden at MOCC (collectively referred to as "the DOC Defendants"). As aptly noted by these defendants in their Memorandum of Law in support of their Motion to Dismiss:

> There is no allegation that Defendants Mon, Rubenstein, and Ballard had any reason to suspect or anticipate that inmate Elmore would target and assault the Plaintiff, and there is not such allegation contained in the Complaint. In fact, there are no allegations whatsoever of any actions or omissions by James Rubenstein, the Commissioner of Corrections, or David Ballard, the Warden at Mount Olive, that allegedly contributed to the Plaintiff's injuries. Plaintiff's Complaint omits both factual and legal bases for any cause of action against Rubenstein and Ballard under any legal theory.

(ECF No. 18 at 2).

Turning to the allegations against defendant Mon, the plaintiff alleges that although Mon was on duty and responsible for monitoring the inmates in the Stuart Hall day room, he was on the telephone, with his back turned to the room he was to be supervising and was "oblivious" to the altercation between the plaintiff and inmate Elmore until another officer brought it to his attention. The plaintiff further alleges that he was found guilty of an institutional violation and placed on punitive segregation

16

because of defendant Mon's statements.  The DOC defendants assert that, "other than disagreeing with the outcome of the institutional hearing, Plaintiff makes no allegations connected with the institutional proceedings that give rise to a legal cause of action." (ECF No. 18 at 2-3).

Thus, the DOC defendants assert that the plaintiff's Complaint fails to sufficiently state any facts that could plausibly support a claim of deliberate indifference against any of them, and that the plaintiff's Complaint should be dismissed under the tenants of *Twombly* and *Iqbal, supra.*  (*Id.* at 5-10).  The DOC defendants emphasize that the plaintiff must demonstrate that specific individual conduct of a defendant is causally connected to his injury.  (*Id.* at 8) (citations omitted).  Their Memorandum of Law further states:

> Mr. Robinson has not alleged that Defendants Mon, Rubenstein, or Ballard directly caused his injuries.  Instead, Mr. Robinson appears to be alleging that Defendant Mon is liable because he did not immediately notice the assault.  "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1976, 128 L. Ed.2d 811, 822 (1994) (additional citation omitted).  However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability. *Id.,* 511 U.S. at 834, 114 S. Ct. at 1977, 128 L. Ed.2d at 823.  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. at 828, 114 S. Ct. at 1974, 128 L. Ed.2d at 820 (additional citations omitted).  Plaintiff has not asserted any factual information that could support a finding that Defendants Mon, Rubenstein, or Ballard were deliberately indifferent in connection with the Plaintiff.

(*Id.* at 8-9).

The DOC defendants' Memorandum of Law also asserts that the plaintiff's Complaint does not successfully allege any violation of his due process rights.  Their Memorandum of Law states in pertinent part:

To the extent that the Plaintiff's Complaint discusses the institutional violation for fighting, resulting in punitive segregation, it is possible that the Plaintiff is attempting to assert violation of his due process rights.  However, his Complaint fails to support such a cause of action.  The Due Process Clause standing alone confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed.2d 418 (1995), *quoting Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (overruled in part by *Sandin v. Connner, supra*).  The United States Supreme Court in *Sandin* rejected the notion that any state action taken for a punitive reason encroaches upon a liberty interest.  *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300, 132 L. Ed.2d at 430.  To the contrary, the Court found that the punishment of incarcerated prisoners serves different aims that those actions held to be invalid in other cases.  *Id.* 515 U.S. at 485, 115 S. Ct. at 2301, 132 L. Ed.2d at 430.  The Court found that punishment in a prison setting "effectuates prison management  and prisoner rehabilitative goals."  *Id.*, 515 U.S. at 485, 115 S. Ct. at 2301, 132 L. Ed.2d at 430-31.

(ECF No. 18 at 10-11).  The DOC defendants go on to explain that "[o]nly those actions that presented an 'atypical and significant deprivation' would even conceivably implicate a liberty interest."  *Sandin*, 515 U.S. at 485, 115 S. Ct. at 2301, 132 L. Ed.2d at 431.  The DOC defendants assert that the plaintiff has not been subjected to any "atypical, significant deprivation" which would give rise to a liberty interest because the actions taken against the plaintiff "fall within the expected parameters of Mr. Robinson's prison sentence.  Therefore, the institutional discipline which is the subject of his complaint does not give rise to a claim of violation of constitutional due process rights."  (*Id.* at 11).

Finally, the DOC defendants' Memorandum of Law asserts that, to the extent that the plaintiff's Complaint is alleging a claim of negligence against defendant Mon for the delay in becoming aware of the altercation involving the plaintiff and inmate Elmore, the DOC defendants assert that they are entitled to qualified immunity on such a claim.  (*Id.* at 11-14).  The DOC defendants' Memorandum of Law further asserts:

The Plaintiff's Complaint does not provide a sufficient factual basis for claims of violations of his civil rights by Defendants Mon, Rubenstein, or Ballard.   While Plaintiff alleges that Defendant Mon did not

immediately become aware of the fact that an inmate fight had broken out, such allegations give rise to a claim of, at best, simple negligence. Claims of simple negligence against Defendant Mon, and any other claims of negligence, to the extent that they are asserted against Defendants Rubenstein and Ballard, are barred by the doctrine of qualified immunity and should be dismissed.

(ECF No. 18 at 3). As noted by the defendants' Memorandum:

"[G]overnment officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official's actions only violate a clearly established right when "in light of preexisting law the unlawfulness of the subject action is apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Further, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004).

(ECF No. 18 at 12). The DOC defendants assert that they are entitled to qualified immunity "because they have not violated any clearly established right of the plaintiff and dismissal is appropriate so that these Defendants can perform their discretionary duties without fear of the burdens of trial." (*Id.* at 13).

The plaintiff's Objection to the Motion to Dismiss by defendants Mon, Rubenstein and Ballard (hereinafter "Response") repeats his assertion that he filed a Motion to Amend in an attempt to "cure" deficiencies in his Complaint, but was not permitted by the undersigned to amend his Complaint. (ECF No. 32 at 1-2). Again, because the plaintiff did not file a proposed Amended Complaint or in any way identify the proposed amendments he sought to make to his Complaint, the undersigned denied the Motion to Amend without prejudice because it was impossible to tell whether any amendments were warranted.

19

The plaintiff also attempts to argue that the Complaint form used by this court states that the plaintiff should not make any legal arguments or cite legal opinions or conclusions.  (ECF No. 32 at 3).  This instruction does not conflict with or override the requirements of Rule 8(a) which requires that a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(1) and (2).  Even construing the plaintiff's Complaint liberally, as the court must, the plaintiff has not alleged any specific bases for his claims and the court and the defendants have had to speculate concerning the same.

The plaintiff's Response further specifically asserts that his Complaint did not make any allegations of simple negligence or *respondeat superior* concerning defendants Rubenstein and Ballard.  (ECF No. 32 at 4).  A large portion of the plaintiff's Response to the DOC defendants' Motion to Dismiss appears to focus on holding defendants Rubenstein and Ballard liable on the basis that they created or permitted potential safety risks to continue.   The Response further argues that defendants Rubenstein and Ballard should be held liable for the alleged conduct of defendant Donna Warden and the medical personnel at MOCC.  The plaintiff largely repeats the arguments made in his Response to defendant Warden's Motion to Dismiss, which will not be re-addressed herein.  (*Id.* at 6-16).

The plaintiff's Response attempts to establish a basis for a "failure to protect" claim that would be actionable under the Eighth Amendment as follows [spelling and grammar corrections made by the court]:

> The [Defendants] have taken great steps to minimize the actions of Officer Mon stating that his actions or inaction were simply negligent in nature because he [knew] of no risk to the Plaintiff and that neither

[Defendants] Rubenstein or Ballard could be held accountable in any manner because they had no knowledge in any manner as well.

In fact, as testimony can verify, for three days prior to the incident culminating in the severe and brutal beating of the Plaintiff by another [inmate] who was acting erratically, Officer Mon and other Unit Team Personnel had been advised to remove the table from behind the stairwell because it posed a "serious security issue" because it was not in open and plain sight of the officer's desk. Officer Mon never took any actions to move the table into an area that did not pose such a serious security issue, so that he would be able to observe what went on at the table.

Furthermore, while knowing that such a "Serious Security Issue" existed in an area under his authority and control, officer Mon freely elected [to] disregard that potential threat or risk to inmate, and instead chose to spend his day talking on the telephone while looking out the unit window for hours, and not paying attention to the serious potential risk under his authority or control. This is especially important [when] considered with the fact that Defendant Mon freely elected not to move the table from an area that posed such a potential security risk, and acted in such a manner while knowing that inmates are prohibited from moving the Dorm furniture.

The Defendants seek to present to the Court that no such set of environmental conditions or circumstances exist in the Plaintiff's situation or have any part in the events culminating into the Plaintiff's action, which would constitute or support any claim of deliberate indifference or other such claim. The Plaintiff contends that such a position is simply not valid.

(ECF No. 32 at 5-6).

Concerning the alleged liability of defendants Rubenstein and Ballard, the plaintiff's Response attempts to hold them liable for Officer Mon's conduct, and further attempts to hold them liable for the alleged ongoing delays in medical treatment by Wexford Health Sources, Inc. The plaintiff claims that defendants Rubenstein and Ballard were aware of these issues through their role in the grievance process and their review of incident reports concerning other such actions and conduct. (*Id.* at 6-14).

These arguments are simply insufficient to state a plausible claim against any of the defendants under the Eighth Amendment. Despite his efforts in his Responses to

demonstrate the DOC defendants' knowledge of a substantial risk of harm based upon the placement of the table in the day room where the altercation occurred, the plaintiff cannot overcome the fact that none of the DOC defendants was actually aware of any potential threat of harm to the plaintiff by inmate Elmore prior to the altercation on March 19, 2013.  That fact is fatal to any "failure to protect" claim that the plaintiff has attempted to raise under the Eighth Amendment.

Furthermore, the plaintiff's allegations that defendant Mon was acting in such a way as to delay his observation of the altercation between the plaintiff and inmate Elmore is, at most, simple negligence, and fails to rise to the level of conduct necessary to state a plausible claim of deliberate indifference to a serious risk of harm sufficient to be actionable under the Eighth Amendment.

Nor can the plaintiff sufficiently demonstrate a due process violation arising out of his disciplinary proceeding.  The plaintiff has failed to establish that the conduct of defendant Mon or any other WVDOC personnel resulted in an atypical and significant deprivation that implicated a substantial liberty interest.  Prison discipline is an expected part of serving a criminal sentence.  Moreover, even if the plaintiff could establish a liberty interest that would give rise to a due process claim, the plaintiff cannot seek monetary damages in a civil rights action unless and until the allegedly improper discipline is overturned.  *See Edwards v. Balisok*, 520 U.S. 641 (1997).  The plaintiff has not demonstrated that his prison disciplinary action has been reversed or overturned.  Thus, his due process claim cannot presently go forward in this court.

Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted against defendant Mon.

Furthermore, the simple fact that the plaintiff has not pled any specific allegations at all concerning the conduct of defendants Rubenstein and Ballard (other than to state their job titles and their alleged supervisory duties) is fatal under *Twombly* and *Iqbal*, *supra*. Moreover, the plaintiff's attempts to cure this fatal flaw through his Responses by attempting to essentially assert claims of supervisory liability based upon the conduct of defendants Mon, Warden, or other Wexford personnel must also fail.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible claim for relief against defendants Rubenstein and Ballard.

Because the plaintiff's Complaint has not sufficiently alleged any violations of clearly-established rights of the plaintiff of which a reasonable official would have known, the undersigned further proposes that the presiding District Judge **FIND** that defendants Mon, Rubenstein and Ballard should be accorded qualified immunity on the plaintiff's claims against them in their individual capacity.

## **RECOMMENDATIONS**

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by Donna Warden (ECF No. 15) and the Motion to Dismiss filed by David Mon, James Rubenstein and David Ballard (ECF No. 17), and **DISMISS** the plaintiff's Complaint (ECF No. 2) for failure to state a claim upon which relief can be granted.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 29, 2014

Dwane L. Tinsley
United States Magistrate Judge

24